UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITIES USA,

      Plaintiff,

v

JOCELYN BENSON, in her official
capacity as the Michigan Secretary
of State,

      Defendant.

_____/

No. 19-13188

HON. ROBERT H. CLELAND

MAG. ANTHONY P. PATTI

**DEFENDANT'S
MOTION TO DISMISS**

Andrew Nickelhoff (P37990)
Attorney for Plaintiff
333 W. Fort Street, Suite 1400
Detroit, Michigan  48226
313.496.9515

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659

_____/

**DEFENDANT'S MOTION TO DISMISS**

      Defendant Jocelyn Benson, Secretary of State for the State of

Michigan, moves for dismissal of Plaintiff Priorities USA's complaint

pursuant to Fed. R. Civ. Proc. 12(b)(1) and (6), for the following reasons:

1. This complaint is a challenge to the constitutionality of several sections of the Michigan Election Law that concern the comparison of signatures on absent voter applications and ballots.

2. Plaintiff Priorities USA is an organization and does not allege that it has members who vote in Michigan.

3. The complaint does not identify any voters who have had their absent voter applications or ballots wrongfully rejected based upon a signature comparison and does not demonstrate any special relationship between Priorities USA and such voters that would support third-party standing.

4. Priorities USA has not alleged that it will incur any particularized injury as a result of the challenged statutes.

5. Priorities USA's claims are instead predicated upon abstract and generalized grievances that are indistinguishable from the interests of any citizen of the State.

6. Priorities USA lacks standing to bring claims challenging the statutes identified in the Complaint.

7. The complaint does not identify any voter who has been improperly rejected based upon a signature comparison.

8. The claims are thus entirely hypothetical and are not ripe for review by this Court.

9. Concurrence in the relief sought in this motion could not be obtained.

For these reasons and the reasons stated more fully in the accompanying brief in support, Defendant Michigan Secretary of State Jocelyn Benson respectfully requests that this Honorable Court enter an order dismissing Plaintiff's complaint against her in its entirety and with prejudice, pursuant to Fed. R. Civ. Proc. 12(b)(1) and (6).

Respectfully submitted,

*s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  grille@michigan.gov
P64713

Dated:  December 12, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITIES USA,

     Plaintiff,

                           No. 19-13188

v

                           HON. ROBERT H. CLELAND

JOCELYN BENSON, in her official
capacity as the Michigan Secretary       MAG. ANTHONY P. PATTI
of State,

     Defendant.

_____/

Andrew Nickelhoff (P37990)
Attorney for Plaintiff
333 W. Fort Street, Suite 1400
Detroit, Michigan  48226
313.496.9515

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659

_____/

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**CONCISE STATEMENT OF ISSUES PRESENTED**

1.     Whether Priorities USA lacks standing to challenge Michigan's method for verifying signatures on absent voter applications and ballots where Priorities USA raises only general grievances on behalf of third parties without any particularized injuries of its own?

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

<u>Authority</u>:
Mich. Comp. Laws 168.761
Mich. Comp. Laws 168.765a(6)
Mich. Comp. Laws 168.766

*Fair Elections Ohio v. Husted*, 770 F.3d 456 (6th Cir. 2014)
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)
*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)
*City of Los Angeles v. Lyons,* 461 U.S. 95 (1983)
*Greater Cincinnati Coalition for the Homeless v. City of Cincinnati,* 56 F.3d 710 (6th Cir. 1995)
*Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016)
*Lance v. Coffman*, 549 U.S. 437 (2007)
*Miyazawa v. City of Cincinnati*, 45 F.3d 126 (6th Cir. 1995)
*Anthony v. Michigan*, 35 F. Supp. 2d 989 (E.D. Mich. 1999)
*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197 (6th Cir. 2011)
*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State* (*Valley Forge*), 454 U.S. 464 (1982)
*City of Cleveland v. Ohio*, 508 F.3d 827 (6th Cir. 2007)
*Kowalski v. Tesmer*, 543 U.S. 125 (2004)
*Singleton v. Wulff*, 428 U.S. 106 (1976)
*Bigelow v. Michigan Dep't of Natural Res.,* 970 F.2d 154 (6th Cir.1992)
*Thomas v. Union Carbide Agr. Products Co.* 473 U.S. 568 (1985)
*Pac. Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190 (1983)

## STATEMENT OF FACTS

The only named plaintiff to this action is Priorities USA, which has identified itself as a 501(c)(4) non-profit advocacy and service organization.  (R. 1, Complaint, PageID 8, ¶19).  It alleges that it engages in activity to "educate, mobilize, and turn out votes" in Michigan, and states that it "expects to" make expenditures and contributions towards those objectives in upcoming Michigan state and federal elections.  (R. 1, PageID 9, ¶19).  Priorities USA has not alleged that it is incorporated in Michigan, or that it has any members that reside or vote in Michigan.

Priorities USA has filed this lawsuit challenging several parts of Michigan's Election Law that provide for comparing signatures on absent voter ballots and absent voter ballot applications against the signature for that voter in the Qualified Voter File (QVF).  First, Mich. Comp. Laws 168.761 provides, in pertinent part, that city or township clerks compare the signatures on absent voter ballot applications to the voters' signatures in the QVF or on the registration card:

> (1) If the clerk of a city or township receives an application for an absent voter ballot from a person registered to vote in that city or township and **if the signature on the application agrees with the signature for the person**

**contained in the qualified voter file or on the registration card** as required in subsection (2), the clerk immediately upon receipt of the application or, if the application is received before the printing of the absent voter ballots, as soon as the ballots are received by the clerk, shall forward by mail, postage prepaid, or shall deliver personally 1 of the ballots or set of ballots if there is more than 1 kind of ballot to be voted to the applicant. Subject to the identification requirement in subsection (6), absent voter ballots may be delivered to an applicant in person at the office of the clerk.

(2) The qualified voter file must be used to determine the genuineness of a signature on an application for an absent voter ballot. **Signature comparisons must be made with the digitized signature in the qualified voter file. If the qualified voter file does not contain a digitized signature of an elector, or is not accessible to the clerk, the city or township clerk shall compare the signature appearing on the application for an absent voter ballot to the signature contained on the master card.** [Emphasis added].

Second, after the absent voter ballot is issued to, completed, and returned by the voter, Mich. Comp. Laws 168.765a(6) provides, in pertinent part, that the voter signatures on the sealed absent voter ballot return envelopes be compared against the voter's signature in the QVF or on the registration card:

Absent voter ballots must be delivered to the absent voter counting boards in the sealed absent voter ballot return envelopes in which they were returned to the clerk. Written or stamped on each of the return envelopes must be the time and the date that the envelope was received by the clerk and a statement by the clerk that **the signatures of the absent**

2

**voters on the envelopes have been checked and found to agree with the signatures of the voters on the registration cards or the digitized signatures of voters contained in the qualified voter file** as provided under section 766. If a signature on the registration card or a digitized signature contained in the qualified voter file and on the absent voter ballot return envelope does not agree as provided under section 766, if the absent voter failed to sign the envelope, or if the statement of the absent voter is not properly executed, the clerk shall mark the envelope "rejected" and the reason for the rejection and shall place his or her name under the notation. **An envelope marked "rejected" must not be delivered to the absent voter counting board but must be preserved by the clerk until other ballots are destroyed in the manner provided in this act.** The clerk shall also comply with section 765(5). [Emphasis added].

Third, Mich. Comp. Laws 168.766 provides that the board of election inspectors receives the sealed absent voter ballot envelopes from the city and township clerks and verifies the legality of the vote by confirming that the signature on the envelope matches the voter's signature in the QVF or on the master voter registration card:

(1) Upon receipt from the city or township clerk of any envelope containing the marked ballot or ballots of an absent voter, the board of inspectors of election shall verify the legality of the vote by doing both of the following:

(a) **Examining the digitized signature** for the absent voter included in the qualified voter file under section 509q or the registration record as provided in subsection (2) **to see that the person has not voted in person, that he or she is a registered voter, and that the signature on the**

**statement agrees with the signature on the registration record.**

   (b) Examining the statement of the voter to see that it is properly executed.

   (2) The qualified voter file must be used to determine the genuineness of a signature on an envelope containing an absent voter ballot. Signature comparisons must be made with the digitized signature in the qualified voter file. If the qualified voter file does not contain a digitized signature of an elector, or is not accessible to the clerk, the city or township clerk shall compare the signature appearing on an envelope containing an absent voter ballot to the signature contained on the master card.  [Emphasis added].

Priorities USA claims that the visual comparisons of signatures required by the above statutes leads to inaccurate comparisons by the local clerks, and that a person's absent voter ballot may be rejected based upon an election official's determination that it does not match. (R. 1, PageID 3-4, ¶¶5-7).  Priorities USA's only allegation of injury is that it, "will have to expend and divert additional funds and resources in GOTV, voter education efforts, mobilization and turn out activities in Michigan, at the expense of its efforts in other states and its other efforts in Michigan in order to combat the effects of…individuals who attempt to vote by absentee ballot only to have their ballots erroneously rejected." (R. 1, PageID 9, ¶19).  The complaint does not identify any

individual voter whose absent voter ballot was wrongfully rejected based upon a signature comparison.

## ARGUMENT

I.  **Priorities USA lacks standing to raise any challenge to Michigan's method of verifying signatures on absent voter applications and ballots.**

This Court must dismiss all counts of Plaintiff's complaint for lack of standing.  In order to establish organizational standing, a plaintiff organization must establish the three traditional elements of standing. See *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014). Constitutional standing requires a plaintiff to demonstrate the following: (a) that it has suffered an "injury in fact," a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (b) a causal connection between the injury and the challenged conduct; and (c) that a favorable court decision is likely to redress or remedy the injury.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-103 (1998).  "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the

burden of establishing its existence." *Steel Co.*, 532 U.S. at 103-104. Because declaratory relief is sought, Priorities USA also has the heightened burden of showing a substantial likelihood they will be injured in the future. *City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983). None of these requirements are met here, and there is no alternative basis that would allow Priorities USA to have standing.

### A. Priorities USA lacks standing because it has not shown that it has, or likely will, suffer any concrete, particularized injury.

To invoke the subject-matter jurisdiction of an Article III federal court, plaintiffs must establish, among other things, an injury-in-fact that is concrete and particularized, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560-61. But, according to the allegations of the Complaint, Priorities USA has not suffered any concrete or particularized injuries. As an organization, Priorities USA is incapable of voting. As a result, it will never be affected by the statutes at issue. Priorities USA, in other words, will never have its ballot rejected based upon a signature comparison.

Priorities USA instead alleges that it will be harmed by having to allocate its resources to "combat the effects" of the existing statutory

process.  (R. 1, PageID 9, ¶19).  However, the Sixth Circuit has

previously rejected the "diversion of resources" theory in similar cases.

In *Fair Elections Ohio*, 770 F.3d at 458, an organization conducting

voter outreach sought to challenge a deadline for requesting an absent

voter ballot on the theory that it prevented people jailed after the

deadline and held through election day from exercising their right to

vote.  The Sixth Circuit held that the organization did not have

standing because the organization had not shown an injury in fact.  *Id.*

at 459.  The Court held that the organization had only an, "abstract

social interest in maximizing voter turnout," and that such abstract

interests cannot confer Article III standing. *Id.* at 461 (citing *Greater

Cincinnati Coalition for the Homeless v. City of Cincinnati,* 56 F.3d 710,

716-17 (6th Cir. 1995)).  Moreover, Priorities USA's First Amendment,

equal protection, and procedural due process claims – all based on

alleged injuries to individual voters – are untethered to its alleged

injury of having to divert its resources.

On the other hand, the Sixth Circuit also addressed the "diversion

of resources" theory in *Northeast Ohio Coalition for the Homeless v.

Husted*, 837 F.3d 612, 624 (6th Cir. 2016), where it found that the

organization plaintiff had standing, but only because it had immediate plans to revise its voter education program to adapt to a *recent* change in law, and that a favorable decision enjoining the new laws would redress that injury.  But that case is distinguishable from the situation Priorities USA faces here, because there has been no recent change in law affecting how ballots are verified or how signatures are compared. Rather, these are long-existing laws.  Just as in *Fair Elections Ohio*, Priorities USA's injury is premised upon the rejected argument that it has standing "merely by virtue of its efforts and expense to advise others how to comport with the law, or by virtue of its efforts and expense to change the law."  770 F.3d at 460.

Further, Priorities USA also does not allege that it is comprised of members that include any Michigan voters, and it also does not allege how it, as an institution, has been injured by the challenged provisions. *Lujan*, 504 U.S. at 560-61.  In short, Priorities USA does not allege how Mich. Comp. Laws 168.761, Mich. Comp. Laws 168.765a, or Mich. Comp. Laws 168.766 have injured it in a manner that could be distinguishable from an alleged hypothetical harm incurred by any actual voter within the State.

To the contrary, Priorities USA raises only general grievances regarding what *may* occur to unidentified voters at some future time. Priorities USA's claims are similar to those considered and easily rejected by the Supreme Court, the Sixth Circuit, and this Court. *See, e.g.*, *Lance v. Coffman*, 549 U.S. 437, 441 (2007) ("[S]tanding to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share." (quotation omitted)); *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 126-28 (6th Cir. 1995) (no standing for resident challenging city charter amendment when she had "suffered no harm, nor will she suffer any greater harm than that of any other voter in the City of Cincinnati"); *Anthony v. Michigan*, 35 F. Supp. 2d 989, 1003 (E.D. Mich. 1999) (no standing for Detroit citizens challenging consolidation of Detroit Recorder's Court because plaintiffs did not "articulate how they [were] *particularly* harmed as a result of the merger") (emphasis in original).

Priorities USA simply has no standing to raise any claims challenging the methods of verifying signatures on absent voter ballots, and so the complaint must be dismissed.

### B.   Priorities USA lacks standing to sue in a representational capacity.

Priorities USA appears to be attempting to invoke the rights of unidentified third-party individuals who are not a party to this suit. But, even in a representational capacity, it must still meet the prudential requirements for standing developed by the Supreme Court. *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State* (*Valley Forge*), 454 U.S. 464, 474 (1982)). First, a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge*, 454 U.S. at 474 (internal quotation marks and citation omitted). Second, a plaintiff must present a claim that is "more than a generalized grievance." *City of Cleveland v. Ohio*, 508 F.3d 827, 835 (6th Cir. 2007) (internal quotation marks omitted). Finally, the complaint must "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Valley Forge*, 454 U.S. at 475 (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970)). "[E]ven when litigants have established a substantial injury from a government

action, they 'cannot challenge its constitutionality unless [they] can show that [they are] within the class whose constitutional rights are allegedly infringed.'" *Smith*, 641 F.3d at 207 (quoting *Barrows v. Jackson*, 346 U.S. 249, 256 (1953)).

Here, Priorities USA is not advancing its own rights, and instead premises this complaint upon the legal rights of others, i.e. absent voters whose applications or ballots might be rejected based upon a signature comparison. It has no particularized injury, and its constitutional rights are not affected by the challenged statutes. This case, therefore, is not an appropriate candidate for third-party standing.

It is true, however, that the Supreme Court has observed that its salutary rule against third-party standing is not absolute. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). The rule "should not be applied where its underlying justifications are absent." *Singleton v. Wulff*, 428 U.S. 106, 114 (1976). In deciding when not to apply this rule, the Supreme Court has considered "two factual elements":

> The first is the relationship of the litigant to the person whose right he seeks to assert. If the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue, the court at least can be sure that its construction of the right is not unnecessary in the sense that the right's enjoyment will be unaffected by the outcome of the suit.

11

> Furthermore, the relationship between the litigant and the
> third party may be such that the former is fully, or very
> nearly, as effective a proponent of the right as the latter.

*Singleton*, 428 U.S. at 114-15.  "Elsewhere, the [Supreme] Court has described this test as requiring that 'the party asserting the right has a 'close' relationship with the person who possesses the right,' and that there is a 'hindrance' to the possessor's ability to protect his own interests.'"  *Smith*, 641 F.3d at 208 (citing *Kowalski*, 543 U.S. at 130).

But in this case, Priorities USA has neither alleged any "special relationship" to any person who might raise a claim that his or her rights have been violated by Michigan's absent voter ballot verification methods, nor identified any person by name.  Moreover, there is no indication that such individuals are incapable of asserting their own rights.  The underlying justifications against third-party standing thus apply, and Priorities USA lacks the requisite standing to bring these claims.

Just as the Sixth Circuit observed in *Fair Elections Ohio,* 770 F.3d at 461, "[t]he plaintiffs are organizations and cannot vote; instead they assert the right to vote of individuals not even presently identifiable." The Sixth Circuit rejected the exceptions to the rule against third party

standing, finding that none applied.  *Id.*  There, just as here, the relationship between the plaintiff organization and the persons whom it seeks to help—unidentified, future voters—does not resemble the close relationship of the lawyer-client or doctor-patient relationships recognized by the Supreme Court.  *Id.*

## II.   Priorities USA's claims are not ripe for review.

Alternatively, Priorities USA's claims are not ripe for judicial review.  The law on ripeness is well-settled.  If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed."  *Bigelow v. Michigan Dep't of Natural Res.,* 970 F.2d 154, 157 (6th Cir. 1992).  "Ripeness is peculiarly a question of timing.  Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreement."  *Thomas v. Union Carbide Agr. Products Co.* 473 U.S. 568, 580 (1985).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Id.*  The ripeness inquiry turns on " 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court

consideration.' " *Pac. Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,* 461 U.S. 190, 201 (1983).

This case presents a classic example of an unripe claim. The entirety of the Complaint rests upon contingent future events that either may not happen at all, or which might occur in a different way than the Plaintiff expects. Priorities USA has not identified a single voter whose absent voter ballot was wrongfully rejected. The complaint instead relies upon allegations that Plaintiff believes that the comparison of signatures is inaccurate (R. 1, PageID 4, ¶7); that absent voter ballots "can be denied" based upon an election official's determination that the signature does not match (R. 1, PageID 3, ¶5); that "it is inevitable that election officials will erroneously reject legitimate ballots" (R. 1, PageID 15, ¶39); and that—as a result of Michigan's recent adoption of no-reason absentee voting, *see* Mich. Const 1963, art. 2, § 4(1)(g), the number of voters who are "**at risk** of being disenfranchised…will increase dramatically absent relief from this Court." (R. 1, PageID 22, ¶59) (emphasis added). Thus, the Complaint is premised entirely upon a belief that unidentified people, at unknown times, in unspecified locations, *could* have had their absent

voter ballots wrongfully rejected based upon a signature matching determination. The claim, therefore, is entirely hypothetical, and invites the Court to assume that somebody, somewhere must have had their rights violated, and that something might happen again.

But there is no guarantee that any of these assumed events will actually occur, or that they will occur as Priorities USA anticipates so far in advance of an election. Any number of things may yet transpire before the election occurs that lead to unanticipated results that negate or obviate the claims raised in the Complaint.

And, again, the Complaint does not allege that any actual person has ever had a ballot wrongfully rejected. Notably, Mich. Comp. Laws 168.765a(6) provides that rejected absent voter ballot envelopes must be retained and preserved until other ballots are destroyed in accordance with the law. As a result, it is possible—if the assumptions of the Complaint are correct—for these claims to be raised by a proper party based upon a concrete occurrence, rather than the hypothetical and abstract claims presented here. The case is simply not ripe, and so it is also subject to dismissal on those grounds.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Priorities USA lacks standing to raise the claims alleged in the complaint and the claims are also not ripe for review, and the complaint must therefore be dismissed in its entirety and with prejudice.

Respectfully submitted,

*s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  grille@michigan.gov
P64713

Dated:  December 12, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2019, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Erik A. Grill*
Erik A. Grill (P64713)
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  grille@michigan.gov
P64713