UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITIES USA and MARISSA
ACCARDO,

     No. 19-13188

     Plaintiffs,

     HON. ROBERT H. CLELAND

v

     MAG. ANTHONY P. PATTI

JOCELYN BENSON, in her official
capacity as the Michigan Secretary
of State,

     **DEFENDANT'S
MOTION TO DISMISS
AMENDED COMPLAINT**

     Defendant.

_____/

Andrew Nickelhoff (P37990)
Attorney for Plaintiff
333 W. Fort Street, Suite 1400
Detroit, Michigan  48226
313.496.9515

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659

_____/

**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

     Defendant Jocelyn Benson, Secretary of State for the State of

Michigan, moves for dismissal of Plaintiff Priorities USA's amended

complaint pursuant to Fed. R. Civ. Proc. 12(b)(1) and (6), for the following reasons:

1. This complaint is a challenge to the constitutionality of several sections of the Michigan Election Law that concern the comparison of signatures on absent voter applications and ballots.

2. Plaintiff Priorities USA is an organization and does not allege that it has members who vote in Michigan.

3. The complaint does not identify any voters who have had their absent voter applications or ballots wrongfully rejected based upon a signature comparison and does not demonstrate any special relationship between Priorities USA and such voters that would support third-party standing.

4. Priorities USA has not alleged that it will incur any particularized injury as a result of the challenged statutes.

5. Priorities USA's claims are instead predicated upon abstract and generalized grievances that are indistinguishable from the interests of any citizen of the State.

6. Priorities USA lacks standing to bring claims challenging the statutes identified in the complaint.

7. The complaint does not identify any voter who has been improperly rejected based upon a signature comparison.

8. The claims are thus entirely hypothetical and are not ripe for review by this Court.

9. Concurrence in the relief sought in this motion could not be obtained.

For these reasons and the reasons stated more fully in the accompanying brief in support, Defendant Michigan Secretary of State Jocelyn Benson respectfully requests that this Honorable Court enter an order dismissing Plaintiff's complaint against her in its entirety and with prejudice, pursuant to Fed. R. Civ. Proc. 12(b)(1) and (6).

Respectfully submitted,

s/Erik A. Grill
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  grille@michigan.gov
P64713

Dated:  January 13, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIORITIES USA,

     Plaintiff,

                              No. 19-13188

v

                              HON. ROBERT H. CLELAND

JOCELYN BENSON, in her official
capacity as the Michigan Secretary     MAG. ANTHONY P. PATTI
of State,

     Defendant.

_____/

Andrew Nickelhoff (P37990)
Attorney for Plaintiff
333 W. Fort Street, Suite 1400
Detroit, Michigan  48226
313.496.9515

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659

_____/


**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
AMENDED COMPLAINT**

## CONCISE STATEMENT OF ISSUES PRESENTED

1.  Whether Priorities USA lacks standing to challenge Michigan's method for verifying signatures on absent voter applications and ballots where Priorities USA raises only general grievances on behalf of third parties without any particularized injuries of its own?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Authority*:
Mich. Comp. Laws 168.761
Mich. Comp. Laws 168.765a(6)
Mich. Comp. Laws 168.766

*Fair Elections Ohio v. Husted*, 770 F.3d 456 (6th Cir. 2014)
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)
*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)
*City of Los Angeles v. Lyons,* 461 U.S. 95 (1983)
*Greater Cincinnati Coalition for the Homeless v. City of Cincinnati,* 56 F.3d 710 (6th Cir. 1995)
*Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612 (6th Cir. 2016)
*Lance v. Coffman*, 549 U.S. 437 (2007)
*Miyazawa v. City of Cincinnati*, 45 F.3d 126 (6th Cir. 1995)
*Anthony v. Michigan*, 35 F. Supp. 2d 989 (E.D. Mich. 1999)
*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197 (6th Cir. 2011)
*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State* (*Valley Forge*), 454 U.S. 464 (1982)
*City of Cleveland v. Ohio*, 508 F.3d 827 (6th Cir. 2007)
*Kowalski v. Tesmer*, 543 U.S. 125 (2004)
*Singleton v. Wulff*, 428 U.S. 106 (1976)
*Bigelow v. Michigan Dep't of Natural Res.,* 970 F.2d 154 (6th Cir.1992)
*Thomas v. Union Carbide Agr. Products Co.* 473 U.S. 568 (1985)
*Pac. Gas and Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190 (1983)

## STATEMENT OF FACTS

Priorities USA has identified itself as a 501(c)(4) non-profit advocacy and service organization.  (R. 15, Am. Complaint, PageID 148, ¶21).  It alleges that it engages in activity to "educate, mobilize, and turn out votes" in Michigan, and states that it "expects to" make expenditures and contributions towards those objectives in upcoming Michigan state and federal elections.  (R. 15, PageID 148, ¶21). Priorities USA has not alleged that it is incorporated in Michigan, or that it has any members that reside or vote in Michigan.

Priorities USA has filed this lawsuit challenging several parts of Michigan's Election Law that provide for comparing signatures on absent voter ballots and absent voter ballot applications against the signature for that voter in the Qualified Voter File (QVF).  First, Mich. Comp. Laws 168.761 provides, in pertinent part, that city or township clerks compare the signatures on absent voter ballot applications to the voters' signatures in the QVF or on the registration card:

> (1) If the clerk of a city or township receives an application for an absent voter ballot from a person registered to vote in that city or township and **if the signature on the application agrees with the signature for the person contained in the qualified voter file or on the registration card** as required in subsection (2), the clerk

1

immediately upon receipt of the application or, if the application is received before the printing of the absent voter ballots, as soon as the ballots are received by the clerk, shall forward by mail, postage prepaid, or shall deliver personally 1 of the ballots or set of ballots if there is more than 1 kind of ballot to be voted to the applicant. Subject to the identification requirement in subsection (6), absent voter ballots may be delivered to an applicant in person at the office of the clerk.

(2) The qualified voter file must be used to determine the genuineness of a signature on an application for an absent voter ballot. **Signature comparisons must be made with the digitized signature in the qualified voter file. If the qualified voter file does not contain a digitized signature of an elector, or is not accessible to the clerk, the city or township clerk shall compare the signature appearing on the application for an absent voter ballot to the signature contained on the master card.** [Emphasis added].

Second, after the absent voter ballot is issued to, completed, and returned by the voter, Mich. Comp. Laws 168.765a(6) provides, in pertinent part, that the voter signatures on the sealed absent voter ballot return envelopes be compared against the voter's signature in the QVF or on the registration card:

Absent voter ballots must be delivered to the absent voter counting boards in the sealed absent voter ballot return envelopes in which they were returned to the clerk. Written or stamped on each of the return envelopes must be the time and the date that the envelope was received by the clerk and a statement by the clerk that **the signatures of the absent voters on the envelopes have been checked and found to agree with the signatures of the voters on the**

2

**registration cards or the digitized signatures of voters contained in the qualified voter file** as provided under section 766. If a signature on the registration card or a digitized signature contained in the qualified voter file and on the absent voter ballot return envelope does not agree as provided under section 766, if the absent voter failed to sign the envelope, or if the statement of the absent voter is not properly executed, the clerk shall mark the envelope "rejected" and the reason for the rejection and shall place his or her name under the notation. **An envelope marked "rejected" must not be delivered to the absent voter counting board but must be preserved by the clerk until other ballots are destroyed in the manner provided in this act.** The clerk shall also comply with section 765(5). [Emphasis added].

Third, Mich. Comp. Laws 168.766 provides that the board of election inspectors receives the sealed absent voter ballot envelopes from the city and township clerks and verifies the legality of the vote by confirming that the signature on the envelope matches the voter's signature in the QVF or on the master voter registration card:

(1) Upon receipt from the city or township clerk of any envelope containing the marked ballot or ballots of an absent voter, the board of inspectors of election shall verify the legality of the vote by doing both of the following:

(a) **Examining the digitized signature** for the absent voter included in the qualified voter file under section 509q or the registration record as provided in subsection (2) **to see that the person has not voted in person, that he or she is a registered voter, and that the signature on the statement agrees with the signature on the registration record.**

3

(b) Examining the statement of the voter to see that it is properly executed.

(2) The qualified voter file must be used to determine the genuineness of a signature on an envelope containing an absent voter ballot. Signature comparisons must be made with the digitized signature in the qualified voter file. If the qualified voter file does not contain a digitized signature of an elector, or is not accessible to the clerk, the city or township clerk shall compare the signature appearing on an envelope containing an absent voter ballot to the signature contained on the master card.  [Emphasis added].

Priorities USA claims that the visual comparisons of signatures required by the above statutes leads to inaccurate comparisons by the local clerks, and that a person's absent voter ballot may be rejected based upon an election official's determination that it does not match. (R. 15, PageID 142-143, ¶¶5-7).

Priorities USA's only allegation of injury is that it, "will have to expend and divert additional funds and resources in GOTV, voter education efforts, mobilization and turn out activities in Michigan, at the expense of its efforts in other states and its other efforts in Michigan in order to combat the effects of…individuals who attempt to vote by absentee ballot only to have their ballots erroneously rejected." (R. 15, PageID 148, ¶21).

Plaintiff Marissa Accardo alleges that she is a Michigan resident and voter, that her 2018 absentee ballot was rejected due to a signature match failure, and she plans to vote again in 2020.  (R. 15, PageID 147-148, ¶20).

## ARGUMENT

### I.   Priorities USA lacks standing to raise any challenge to Michigan's method of verifying signatures on absent voter applications and ballots.

This Court must dismiss all counts of Plaintiff's complaint for lack of standing.  In order to establish organizational standing, a plaintiff organization must establish the three traditional elements of standing. See *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014). Constitutional standing requires a plaintiff to demonstrate the following: (a) that it has suffered an "injury in fact," a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (b) a causal connection between the injury and the challenged conduct; and (c) that a favorable court decision is likely to redress or remedy the injury.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-103 (1998).  "This triad of injury in fact, causation, and

redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co.*, 532 U.S. at 103-104. Because declaratory relief is sought, Priorities USA also has the heightened burden of showing a substantial likelihood they will be injured in the future. *City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983). None of these requirements are met here, and there is no alternative basis that would allow Priorities USA to have standing.

### A. Priorities USA lacks standing because it has not shown that it has, or likely will, suffer any concrete, particularized injury.

To invoke the subject-matter jurisdiction of an Article III federal court, plaintiffs must establish, among other things, an injury-in-fact that is concrete and particularized, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560-61. But, according to the allegations of the complaint, Priorities USA has not suffered any concrete or particularized injuries. As an organization, Priorities USA is incapable of voting. As a result, it will never be affected by the statutes at issue. Priorities USA, in other words, will never have its ballot rejected based upon a signature comparison.

6

Priorities USA instead alleges that it will be harmed by having to allocate its resources to "combat the effects" of the existing statutory process. (R. 1, PageID 9, ¶19). But the Supreme Court has held that a plaintiff "cannot manufacture standing by choosing to make expenditures based upon a hypothetical future harm." *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 402 (2013). While the Supreme Court in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) recognized standing for an organization where its operations were "perceptibly impaired" by a diversion of resources, and a "concrete and demonstrable injury the organization's activities," Priorities USA makes no such allegations. To the contrary, they expressly allege that they have committed $100 million in their efforts across four states, and that it has already spent over $1,000,000 on advertising and voter education. (R.15, PageID#148-149, ¶21). Absent from this allegation is any indication how the challenged statutes result in a diversion of resources sufficient to "perceptibly impair" such efforts. The amended complaint fails to explain how Priorities USA's efforts to educate voters and mobilize turnout will be any different as a result of the challenged

statutes, or that there is anything they will be unable to do as a result of Michigan's laws.

Moreover, the Sixth Circuit has previously rejected the "diversion of resources" theory in similar election cases.  In *Fair Elections Ohio*, 770 F.3d at 458, an organization conducting voter outreach sought to challenge a deadline for requesting an absent voter ballot on the theory that it prevented people jailed after the deadline and held through election day from exercising their right to vote.  The Sixth Circuit held that the organization did not have standing because the organization had not shown an injury in fact.  *Id.* at 459.  The Court held that the organization had only an, "abstract social interest in maximizing voter turnout," and that such abstract interests cannot confer Article III standing.  *Id.* at 461 (citing *Greater Cincinnati Coalition for the Homeless v. City of Cincinnati,* 56 F.3d 710, 716-17 (6th Cir. 1995)). Moreover, Priorities USA's First Amendment, equal protection, and procedural due process claims – all based on alleged injuries to individual voters – are untethered to its alleged injury of having to divert its resources.

8

On the other hand, the Sixth Circuit also addressed the "diversion of resources" theory in *Northeast Ohio Coalition for the Homeless v. Husted*, 837 F.3d 612, 624 (6th Cir. 2016), where it found that the organization plaintiff had standing, but only because it had immediate plans to revise its voter education program to adapt to a *recent* change in law, and that a favorable decision enjoining the new laws would redress that injury.  But that case is distinguishable from the situation Priorities USA faces here, because there has been no recent change in law affecting how ballots are verified or how signatures are compared.  Rather, these are long-existing laws.  Just as in *Fair Elections Ohio*, Priorities USA's injury is premised upon the rejected argument that it has standing "merely by virtue of its efforts and expense to advise others how to comport with the law, or by virtue of its efforts and expense to change the law."  770 F.3d at 460.

Also, the Fifth Circuit previously held that "not every diversion of resources" establishes an injury in fact.  *NAACP v. City of Kyle*, 636 F.3d 233, 238 (5th Cir. 2010).  "The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to

impart standing upon the organization." *Ass'n for Retarded Citizens of Dallas v. Dallas Cty. Mental Health & Mental Retardation Ctr. Bd. Of Trustees*, 19 F.3d 241, 244 (1994).

Further, Priorities USA cannot assert any injuries on behalf of allegedly injured members through associational standing. See e.g. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.,* 528 U.S. 167, 181 (2000). To prevail on this theory, an organization must show that "[1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth*, 528 U.S. at 181 (citing *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343 (1977). The organization here fails that test.

Priorities USA does not allege that it is comprised of members that include any Michigan voters, and does not even describe itself as a membership organization. At a minimum, the amended complaint does not identify any members. See *NAACP v. City of Kyle*, 626 F3d at 237. It does not allege how Priorities USA, as an institution, has been

injured by Mich. Comp. Laws 168.761, Mich. Comp. Laws 168.765a, or

Mich. Comp. Laws 168.766 in a manner that is distinguishable from

any alleged harm to an actual voter within the State. *Lujan*, 504 U.S.

at 560-61.

To the contrary, Priorities USA raises only general grievances

regarding what *may* occur to unknown voters at some future time.

Priorities USA's claims are similar to those considered and easily

rejected by the Supreme Court, the Sixth Circuit, and this Court. *See,*

*e.g.*, *Lance v. Coffman*, 549 U.S. 437, 441 (2007) ("[S]tanding to sue may

not be predicated upon an interest of the kind alleged here which is held

in common by all members of the public, because of the necessarily

abstract nature of the injury all citizens share." (quotation omitted));

*Miyazawa v. City of Cincinnati*, 45 F.3d 126, 126-28 (6th Cir. 1995) (no

standing for resident challenging city charter amendment when she had

"suffered no harm, nor will she suffer any greater harm than that of any

other voter in the City of Cincinnati"); *Anthony v. Michigan*, 35 F. Supp.

2d 989, 1003 (E.D. Mich. 1999) (no standing for Detroit citizens

challenging consolidation of Detroit Recorder's Court because plaintiffs

did not "articulate how they [were] *particularly* harmed as a result of the merger") (emphasis in original).

Priorities USA simply has no standing to raise any claims challenging the methods of verifying signatures on absent voter ballots, and so the complaint must be dismissed.

### B. Priorities USA lacks standing to sue in a representational capacity.

Priorities USA appears to be attempting to invoke the rights of unidentified third-party individuals who are not a party to this suit. But, even in a representational capacity, it must still meet the prudential requirements for standing developed by the Supreme Court. *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State* (*Valley Forge*), 454 U.S. 464, 474 (1982)). First, a "plaintiff generally must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge*, 454 U.S. at 474 (internal quotation marks and citation omitted). Second, a plaintiff must present a claim that is "more than a generalized grievance." *City of Cleveland v. Ohio*, 508 F.3d 827, 835 (6th Cir. 2007) (internal quotation marks

omitted).  Finally, the complaint must "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Valley Forge*, 454 U.S. at 475 (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970)).  "[E]ven when litigants have established a substantial injury from a government action, they 'cannot challenge its constitutionality unless [they] can show that [they are] within the class whose constitutional rights are allegedly infringed.'" *Smith*, 641 F.3d at 207 (quoting *Barrows v. Jackson*, 346 U.S. 249, 256 (1953)).

Here, Priorities USA is not advancing its own rights, and instead premises this complaint upon the legal rights of others, i.e. absent voters whose applications or ballots might be rejected based upon a signature comparison.  It has no particularized injury, and its constitutional rights are not affected by the challenged statutes.  This case, therefore, is not an appropriate candidate for third-party standing.

It is true, however, that the Supreme Court has observed that its salutary rule against third-party standing is not absolute.  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).  The rule "should not be applied where its underlying justifications are absent."  *Singleton v. Wulff*, 428

U.S. 106, 114 (1976).  In deciding when not to apply this rule, the

Supreme Court has considered "two factual elements":

> The first is the relationship of the litigant to the person
> whose right he seeks to assert. If the enjoyment of the right
> is inextricably bound up with the activity the litigant wishes
> to pursue, the court at least can be sure that its construction
> of the right is not unnecessary in the sense that the right's
> enjoyment will be unaffected by the outcome of the suit.
> Furthermore, the relationship between the litigant and the
> third party may be such that the former is fully, or very
> nearly, as effective a proponent of the right as the latter.

*Singleton*, 428 U.S. at 114-15.  "Elsewhere, the [Supreme] Court has

described this test as requiring that 'the party asserting the right has a

'close' relationship with the person who possesses the right,' and that

there is a 'hindrance' to the possessor's ability to protect his own

interests.'"  *Smith*, 641 F.3d at 208 (citing *Kowalski*, 543 U.S. at 130).

But in this case, Priorities USA has neither alleged any "special

relationship" to any person who might raise a claim that his or her

rights have been violated by Michigan's absent voter ballot verification

methods nor identified any person by name.  Moreover, there is no

indication that such individuals are incapable of asserting their own

rights.  The underlying justifications against third-party standing thus

apply, and Priorities USA lacks the requisite standing to bring these claims.

Just as the Sixth Circuit observed in *Fair Elections Ohio,* 770 F.3d at 461, "[t]he plaintiffs are organizations and cannot vote; instead they assert the right to vote of individuals not even presently identifiable." The Sixth Circuit rejected the exceptions to the rule against third party standing, finding that none applied.  *Id.*  There, just as here, the relationship between the plaintiff organization and the persons whom it seeks to help—unidentified, future voters—does not resemble the close relationship of the lawyer-client or doctor-patient relationships recognized by the Supreme Court.  *Id.*

### C.   Plaintiff Accardo's standing does not grant standing to Priorities USA.

For purposes of this motion—filed before any discovery has taken place—Defendant Benson assumes, as she must, that Plaintiff Marissa Accardo's allegations are true and acknowledges that she appears to have standing to raise the claims in the amended complaint.  Her standing, however, does not translate into standing for Priorities USA.

In *Rumsfeld v. Forum for Academic & Inst. Rights, Inc.,* 547 U.S. 47, 52 n.2 (2006), the Supreme Court noted that "the presence of one

party with standing is sufficient to satisfy Article III's case or controversy requirement." However, this footnote is far from a wholesale elimination of the standing requirement, and instead appears to bear more upon the ability of Courts to reach questions brought by a party with standing, as opposed to any waiver of standing for parties without an injury in fact. Indeed, the Sixth Circuit—in finding claims brought by one party with standing to be justiciable, nonetheless held that another party still lacked standing:

> To the extent that Glass's arguments do not differ from those of the other plaintiffs, his lack of standing does not affect our ability to reach them. To the extent that any of Glass's arguments are Redford-specific, his lack of standing prevents us from reaching them.

*Phillips v. Snyder*, 836 F.3d 707, 714 n.2 (6th Cir. 2016).

Here, Secretary of State Benson does not challenge this Court's ability to reach the issues raised in this case, and instead challenges only the ability of Priorities USA to continue in the case. Other federal courts have engaged in similar analysis. In *Liberty Legal Fund v. Nat'l Democratic Party of the USA, Inc.*, 875 F.Supp.2d 791, 800 (W.D. Tenn., 2012), the court held that while a plaintiff must allege facts to show that at least one plaintiff has standing to bring the claims, "one

plaintiff's standing, however, is not imputed to other named plaintiffs who lack standing."

The court, relying upon *ACLU v. NSA*, 493, F.3d 644, 652 (6th Cir. 2007)("[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to the particular claims asserted") conducted a plaintiff-specific inquiry to determine whether the elements of standing were alleged with the requisite specificity. *Liberty Legal Fund*, 875 F,Supp.2d at 800.  After reviewing the complaint, the court dismissed plaintiffs who failed to meet those requirements—including an organization that failed to plead that it had members who would have standing. *Liberty Legal Fund*, 875 F,Supp.2d at 800-803.  Secretary Benson asks only that this Court undertake the same examination and allow this case to go forward only with parties who have alleged an injury in fact.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Priorities USA lacks standing to raise the claims alleged in the complaint and the claims are also not ripe for

17

review, and the amended complaint must therefore be dismissed in its entirety and with prejudice.

Respectfully submitted,

*s/Erik A. Grill*
Erik A. Grill (P64713)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  grille@michigan.gov
P64713

Dated:  January 13, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2019, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Erik A. Grill*
Erik A. Grill (P64713)
Assistant Attorney General
P.O. Box 30736
Lansing, Michigan  48909
517.335.7659
Email:  grille@michigan.gov
P64713