## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| PRIORITIES USA and MARISSA ACCARDO, <br><br>              Plaintiffs, <br><br>     v. <br><br> JOCELYN BENSON, in her official capacity as the Michigan Secretary of State, <br><br>     and <br><br> THE MICHIGAN SENATE and THE MICHIGAN HOUSE OF REPRESENTATIVES, <br><br>              Defendants. | Civil Action No. 3:19-cv-13188-RHC-APP <br><br> Honorable Robert H. Cleland <br><br> Magistrate Anthony A. Patti |

## PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL

Plaintiffs Priorities USA and Marissa Accardo respectfully ask this Court to grant their request to voluntarily dismiss this action without prejudice, pursuant to Fed. R. Civ. P. 41(a)(2). Plaintiffs' lawsuit sought injunctive relief to prevent the erroneous rejection of absentee ballots and ballot applications under the arbitrary, opaque, and error-prone signature matching process set forth in Mich. Comp. Laws §§ 168.761(1)-(2), 168.765a(6), 168.766(1)(a), (2) (the "Signature Matching Regime"). On February 25, 2020, Plaintiffs filed a Motion for Preliminary Injunction requesting specific relief to address the constitutional defects that Plaintiffs identified in the Signature Matching Regime. ECF No. 22 at 4-5. *Two days later*, the Secretary issued guidance to city and township election officials that largely tracks

the relief requested in the Motion, Brater Decl. at 38-40, Ex. C; ECF No. 28-2 at 38-40, but failed to disclose this guidance to Plaintiffs until April 7, 2020, when the Secretary filed her Response to Plaintiffs' Motion for Preliminary Injunction. ECF No. 28.

Because the guidance provides much of the preliminary injunctive relief that Plaintiffs requested and addresses the defects identified in their claims, and for the reasons set forth in the accompanying Memorandum, Plaintiffs seek to voluntarily dismiss this matter without prejudice.

Pursuant to Local Rule 7.1(a), Plaintiffs sought but were unable to obtain concurrence in the relief requested in this Motion.

Date: April 21, 2020

Respectfully submitted,

s/ *Marc E. Elias*
Marc E. Elias
Uzoma Nkwonta
Jacki L. Anderson
K'Shaani Smith
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
melias@perkinscoie.com
unkwonta@perkinscoie.com
jackianderson@perkinscoie.com
kshaanismith@perkinscoie.com

Andrew Nickelhoff (P37990)
NICKELHOFF & WIDICK, PLLC
333 W. Fort St., Suite 1400
Detroit, MI 48226
Telephone: (313) 496-9429
Fax: (313) 965-4602
anickelhoff@michlabor.legal

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21, 2020, the foregoing was filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Respectfully submitted,

s/ *Marc E. Elias*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |
|---|---|
| PRIORITIES USA and MARISSA ACCARDO,<br><br>          Plaintiffs,<br><br>   v.<br><br>JOCELYN BENSON, in her official capacity as the Michigan Secretary of State,<br><br>    and<br><br>THE MICHIGAN SENATE and THE MICHIGAN HOUSE OF REPRESENTATIVES,<br><br>          Defendants. | Civil Action No. 3:19-cv-13188-RHC-APP<br><br>Honorable Robert H. Cleland<br><br>Magistrate Anthony A. Patti<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR VOLUNTARY DISMISSAL** |

Marc E. Elias
Uzoma Nkwonta
Jacki L. Anderson
K'Shaani Smith
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
melias@perkinscoie.com
unkwonta@perkinscoie.com
jackianderson@perkinscoie.com
kshaanismith@perkinscoie.com

Andrew Nickelhoff (P37990)
NICKELHOFF & WIDICK, PLLC
333 W. Fort St., Suite 1400
Detroit, MI 48226
Telephone: (313) 496-9429
Fax: (313) 965-4602
anickelhoff@michlabor.legal

*Counsel for Plaintiffs*

## ISSUE PRESENTED

Should the Court grant Plaintiffs' motion to voluntarily dismiss this matter without prejudice where Defendant Secretary of State has issued guidance to address the constitutional defects in the signature verification process that Plaintiffs had identified and implement much of the preliminary injunctive relief that Plaintiffs requested; and neither Defendant nor Intervenors can demonstrate that they will be prejudiced by dismissal?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1. *Arvai v. Allstate Indem. Co.*, No. 14-10954, 2015 WL 13021803 (E.D. Mich. Feb. 18, 2015)

2. *Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948 (6th Cir. 2009)

3. *Can IV Packard Square, LLC v. Schubiner*, 768 F. App'x 308 (6th Cir. 2019)

4. *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716 (6th Cir. 1994)

5. *Rouse v. Caruso*, No. 06-cv-10961, 2007 WL 909600 (E.D. Mich. Mar. 23, 2007)

# TABLE OF CONTENTS

ISSUE PRESENTED ................................................................................. i

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........................... ii

INTRODUCTION ................................................................................... 1

FACTUAL BACKGROUND ....................................................................... 5

ARGUMENT ........................................................................................ 8

CONCLUSION ..................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**                                           **PAGE(S)**

*Arvai v. Allstate Indem. Co.*,
   No. 14-10954, 2015 WL 13021803 (E.D. Mich. Feb. 18, 2015) .........................9

*Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*,
   583 F.3d 948 (6th Cir. 2009) ..........................................................................8, 10

*Can IV Packard Square, LLC v. Schubiner*,
   768 F. App'x 308 (6th Cir. 2019) .........................................................................9

*Grover by Grover v. Eli Lilly & Co.*,
   33 F.3d 716 (6th Cir. 1994) .............................................................................8, 9

*Hare v. Berrien Cty. Bd. of Election Comm'rs*,
   129 N.W.2d 864 (Mich. 1964).............................................................................11

*Johnson v. Pharmacia & Upjohn Co.*,
   192 F.R.D. 226 (W.D. Mich. 1999)......................................................................9

*Rosenthal v. Bridgestone/Firestone, Inc.*,
   217 F. App'x 498 (6th Cir. 2007) .........................................................................9

*Rouse v. Caruso*,
   No. 06-cv-10961, 2007 WL 909600 (E.D. Mich. Mar. 23, 2007) .......................8

## OTHER AUTHORITIES

Fed. R. Civ. P. 26 ......................................................................................................6

Fed. R. Civ. P. 41 ..................................................................................................5, 8

iv

## INTRODUCTION

In response to Plaintiffs Priorities USA and Marissa Accardo's lawsuit challenging the signature matching process for absentee ballots and ballot applications, set forth in Mich. Comp. Laws §§ 168.761(1)-(2), 168.765a(6), 168.766(1)(a), (2) (the "Signature Matching Regime"), Defendant Michigan Secretary of State Jocelyn Benson (the "Secretary") issued guidance to city and township election officials adopting additional procedures and standards for signature matching that mostly track the specific defects that Plaintiffs identified in their Amended Complaint ("Complaint") and the injunctive relief requested in their Motion for Preliminary Injunction. ECF No. 22 at 4-5.

Although the Secretary issued her new guidance on February 27, 2020, *two days after* Plaintiffs filed their Motion for Preliminary Injunction ("Motion"), she did not disclose it publicly; Plaintiffs only learned of the guidance through the Secretary's response brief ("Response")—filed on April 7—notwithstanding Plaintiffs' good faith attempts to confer with the Secretary in accordance with the Federal Rules of Civil Procedure and local rules. For instance, the parties conducted a Rule 26(f) conference on February 5, 2020, yet the Secretary refused to file a joint Rule 26(f) report, ECF No. 21, and did not disclose any intent to adopt the new guidance that she issued approximately three weeks later. Nor did she disclose any such plans when Plaintiffs' counsel attempted to confer with the Secretary's counsel *before* filing the preliminary injunction motion, pursuant to Local Rule 7.1, even though Plaintiffs detailed, in advance, their requested relief. ECF No. 22 at 5.

Plaintiffs also issued discovery requests on March 4 that would have required the Secretary to disclose her February 27 guidance along with any plans to implement signature matching safeguards in the future. One of Plaintiffs' interrogatories asked the Secretary to: "[i]dentify and describe in detail any steps or actions you have taken to ensure that City and Township Clerks . . . apply consistent and uniform standards in matching signatures and otherwise enforcing the Signature Matching Regime." Pls.' First Set of Interrogs. No. 3, Ex. A. And Plaintiffs' Request for Production asked the Secretary to produce "educational or training materials, including informal guidance and communications, provided to City or Township Clerks . . . regarding signature matching . . . ." Pls.' First Req. for Produc. No. 2, Ex. B. The guidance that the Secretary submitted to the Court, and the plans she revealed in her Response, were clearly responsive to these requests but were not disclosed to Plaintiffs; instead, the Secretary has indicated that her discovery responses are still in progress.

Putting aside the communication breakdowns that led the parties to this point, it is now clear that the Secretary has taken action to address the defects in the Signature Matching Regime identified in Plaintiffs' Complaint and the relief requested in Plaintiffs' Motion. Plaintiffs alleged, for example, that the absence of procedures to ensure that voters are timely notified of any signature mismatch determinations burdened the right to vote, ECF No. 15 at ¶¶ 10, 29, 37, 64, 77, and their Motion requested that the Secretary instruct clerks to provide notice of signature mismatch determinations within 24 hours of such determination by phone, text, and email, ECF No. 22 at 4. The Secretary subsequently instructed elections

2

officials to provide such notice by telephone, e-mail, and letter by the end of next business day (for ballots or applications submitted by Wednesday before Election Day), and "as soon as possible" starting on Thursday before the election. *Id.*

Plaintiffs also challenged the absence of any opportunity to cure or contest signature mismatch determinations, ECF No. 15 at ¶¶ 12, 29, 37, 46-47, 64, 77, and requested a cure procedure for absentee ballots and ballot applications, ECF No. 22 at 4. The Secretary then instructed elections officials to implement procedures such that (1) voters can cure mail applications by the Friday before Election Day and in-person applications by the Monday before Election Day; and (2) voters can cure ballots by 8:00 p.m. on Election Day at the city or township clerk's office, or for ballots received before the Saturday before the election, voters can obtain a new absentee ballot. Brater Decl. at 40, Ex. C; ECF No. 28-2 at 40. The Secretary has also committed to adopting additional post-election cure procedures. ECF No. 28 at 12, 21.

Plaintiffs further alleged that the Signature Matching Regime lacked sufficient uniform standards or guidance for election officials tasked with reviewing signatures, *see, e.g.*, ECF No. 15 at ¶¶ 5, 7, 11, 27-28, 36, 38, 44, 48, 64, 71, and requested safeguards to ensure that ballots are not rejected for signature mismatch unless officials find, beyond a reasonable doubt, that the signatures do not match, ECF No. 22 at 4-5. The Secretary, in turn, introduced new signature review guidelines that instruct election officials to presume that the signature is valid; that a signature is only considered questionable "if it differs in multiple, significant <u>and</u> obvious respects from the signature on file"; and that "[s]light dissimilarities should

3

be resolved in favor of the voter whenever possible." Brater Decl. at 38-39, Ex. C; ECF No. 28-2 at 38-39.

Finally, Plaintiffs pointed to the lack of signature matching training for election officials, ECF No. 15 at ¶¶ 28, 36, 38; ECF No. 22 at 4. In response, the Secretary created a new resource "that instructs clerks on how to perform their signature verification duties," which will be incorporated in manuals and instruction for election officials and poll workers. Brater Decl. ¶ 19, Ex. C; ECF No. 28-2 ¶ 19; *see also* Brater Decl. at 38-39, Ex. C; ECF No. 28-2 at 38-39. To be sure, the Secretary's guidance does not mirror every detail of Plaintiffs' requested preliminary injunction relief, but the materials she has filed with the court indicate that she has taken steps, or intends to take action in the future, to ensure that the substance of Plaintiffs' relief will be implemented in upcoming elections.

Given their obvious impact on this litigation, these measures should have been disclosed to all parties long before the Secretary's Response was filed. Instead, the Secretary attempts to invoke the new guidance to refute Plaintiffs' claims as if that guidance had been in place all along—despite the fact that it was adopted only after Plaintiffs brought this lawsuit and requested preliminary injunctive relief. But Plaintiffs sought to enjoin the enforcement of the Signature Matching Regime because of the absence of uniform standards and training for signature matching; the lack of notice to voters of perceived signature mismatches; and the absence of opportunities to cure or contest signature match determinations. It was only after Plaintiffs filed this action and sought this relief, that the Secretary has instructed local election officials to implement such procedures, largely tracking Plaintiffs'

requested relief and specifically addressing the defects that Plaintiffs had identified in the Signature Matching Regime. Thus, pursuant to Fed. R. Civ. P. 41(a)(2), Plaintiffs respectfully move this Court to voluntarily dismiss this action without prejudice.

## FACTUAL BACKGROUND

Plaintiffs Priorities USA ("Priorities") and Marissa Accardo's lawsuit challenges the signature matching process for absentee ballots and ballot applications set forth under Mich. Comp. Laws §§ 168.761(1)-(2), 168.765a(6), 168.766(1)(a), (2) (the "Signature Matching Regime"), and alleges that the Signature Matching Regime has wrongfully disenfranchised Michigan voters in violation of the First and Fourteenth Amendments to the U.S. Constitution.[1] *See generally* ECF No. 1; ECF No. 15. The Signature Matching Regime lacked uniform standards for reviewing signatures on absentee ballots and ballot applications and allowed city and township clerks to reject ballots and applications due to perceived signature mismatches without providing any notice to voters or an opportunity to cure or contest the signature mismatch determinations. *See* ECF No. 15 at ¶¶ 10-11, 27-29, 36-38, 44, 46-48. Thus, Plaintiffs alleged that the Signature Matching Regime unduly burdened Michigan citizens' right to vote, subjected similarly situated voters to arbitrary and diverging standards depending on the city or township in which they

---

[1] Plaintiffs filed an Amended Complaint for Declaratory and Injunctive Relief on December 30, 2019, which added Marissa Accardo as a Plaintiff, but asserted the same claims. ECF No. 15.

reside, and erroneously deprived voters of their fundamental right to vote without due process. *Id.* ¶¶ 64-66, 71-72, 77-78.[2]

The Secretary filed a Motion to Dismiss Priorities from the lawsuit, arguing that it lacked standing, but acknowledged that Ms. Accardo appeared to have standing to proceed. ECF No. 17. On February 3, 2020, Plaintiffs filed their Response, and, because the Secretary's motion to dismiss was not case dispositive— both parties agreed that at least one plaintiff had standing—Plaintiffs initiated a Rule 26(f) conference.

On February 5, counsel for Plaintiffs and the Secretary conferred to discuss, among other things, the "basis of their claims and defenses and the possibilities for promptly settling or resolving the case." Fed. R. Civ. P. 26(f)(2). Fourteen days later, on February 19, Plaintiffs filed a Rule 26(f) Report, which the Secretary refused to join, ECF No. 21, and which would have required her to reveal her position on Plaintiffs' claims. *See* Fed. R. Civ. P. 26(f)(2).

Less than a week later, on February 24, Plaintiffs conferred with the Secretary's counsel regarding Plaintiffs' impending Motion for Preliminary Injunction and requested relief, pursuant to Local Rule 7.1, but was unable to obtain the Secretary's concurrence. *See* ECF No. 22 at 5. The next day, Plaintiffs filed their Motion for Preliminary Injunction, detailing their requested relief and noting that Plaintiffs' counsel requested, but did not obtain agreement with the relief sought. *Id.*

---

[2] On November 27, 2019, the Michigan House of Representatives and the Michigan Senate (collectively, "the Legislature") filed a motion to intervene, ECF No. 7, which Plaintiffs opposed, ECF No. 11. The Court granted the Legislature's Motion to Intervene in its March. 24, 2020 Order. ECF No. 24.

at 4-5. Just two days later, on February 27, the Secretary issued guidance to city and township election officials, adopting the substance of Plaintiffs' requested relief (the "February 27 guidance"), unbeknownst to Plaintiffs. *See* Brater Decl. at 36-40, Ex. C; ECF No. 28-2 at 36-40. Most notably, the guidance:

- instructs clerks to provide such notice by telephone, e-mail, and letter by the end of next business day (for ballots or applications submitted by Wednesday before Election Day), and "as soon as possible" starting on Thursday before the election;

- instructs elections officials to implement procedures such that (1) voters can cure mail applications by the Friday before Election Day and in-person applications by the Monday before Election Day, and (2) voters can cure ballots by 8:00 p.m. on Election Day at the city or township clerk's office, or for ballots received before the Saturday before the election, voter can obtain a new absentee ballot (and the Secretary has stated in her filings with the Court that she plans to adopt additional post-election cure procedures);

- introduces new signature review guidelines that include, for example, instructions to election officials to presume that the signature is valid and is only considered questionable "if it differs in multiple, significant <u>and</u> obvious respects from the signature on file [and that] [s]light dissimilarities should be resolved in favor of the voter whenever possible*." Id.* at 38-39;

- introduces a new resource "that instructs clerks on how to perform their signature verification duties" and "provides concrete examples for clerks on what the Bureau [of Elections] would consider a valid signature versus a questionable signature, and why." Brater Decl. ¶ 19, Ex. C; ECF No. 28-2 at ¶ 19. The Director

7

of the Bureau of Elections further indicated in a declaration submitted in support of the Secretary's Response that this new guidance would be incorporated in manuals and instruction for clerks and election workers. Brater Decl. at 38-39, Ex. C; ECF No. 28-2 at 38-39.

The Secretary issued this guidance in a newsletter to local election officials and other subscribers, but did not disclose it to Plaintiffs, nor did she produce it in response to discovery requests seeking documents and information related to signature matching training materials and guidance to election officials. *See* Pls.' First Req. for Produc., Ex. B; Pls.' First Set of Interrogs., Ex. A. It was not until the Secretary filed her Response to Plaintiffs' Motion for Preliminary Injunction, on April 7, that she disclosed the new guidance and procedures described above. ECF No. 28.

## ARGUMENT

Federal Rule of Civil Procedure 41(a)(2) governs voluntary dismissals by court order. In relevant part, it provides: "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper," and "[u]nless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Fed. R. Civ. P. 41(a)(2). "Ordinarily, voluntary dismissal without prejudice should be granted unless the defendant shows that a dismissal will result in plain legal prejudice." *Rouse v. Caruso*, No. 06-cv-10961, 2007 WL 909600, at *3 (E.D. Mich. Mar. 23, 2007); *see also Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948, 953 (6th Cir. 2009). "Plain legal prejudice" does not result simply because the defendant faces the prospect of defending a second lawsuit, *see Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994), nor does

it result simply because the plaintiff may gain some tactical advantage in a future lawsuit, *Rosenthal v. Bridgestone/Firestone, Inc.*, 217 F. App'x 498, 502 (6th Cir. 2007). Instead, the Sixth Circuit has identified four factors for courts to consider in determining whether prejudice would result from voluntary dismissal: (1) the defendant's effort and expense in preparing for trial; (2) excessive delay or lack of diligence by the plaintiff in prosecuting the action; (3) insufficiencies in the plaintiff's explanation of the need for a dismissal; and (4) whether a motion for summary judgment is pending. *Grover by Grover,* 33 F.3d at 718; *Arvai v. Allstate Indem. Co.*, No. 14-10954, 2015 WL 13021803, at *1 (E.D. Mich. Feb. 18, 2015); *Johnson v. Pharmacia & Upjohn Co.*, 192 F.R.D. 226, 228 (W.D. Mich. 1999) (citing the *Grover* test).

In this case, each factor weighs strongly in favor of granting voluntary dismissal without prejudice. No summary judgment motion has been filed, the case is still in its early stages, and only limited discovery has occurred. Indeed, Plaintiffs served discovery requests to the Secretary on March 4, but no additional discovery has been exchanged since then. *See* Pls.' First Req. for Produc., Ex. B; Pls.' First Set of Interrogs., Ex. A; *see also Can IV Packard Square, LLC v. Schubiner*, 768 F. App'x 308, 312 (6th Cir. 2019) (finding dismissal without prejudice did not cause defendant to suffer plain legal prejudice because "the case—and the much greater costs sure to attend it—had scarcely begun"). Nor have Plaintiffs delayed in prosecuting this action or seeking dismissal. Indeed, Plaintiffs filed this Motion just two weeks after receiving the Response disclosing for the first time the Secretary's new guidance to election officials. All parties were made aware that Plaintiffs were

9

assessing the effect of the Secretary's guidance on their claims and request for preliminary injunction. Such actions warrant voluntary dismissal without prejudice as "weigh[ing] the costs and benefits of continuing to litigate" a case does not constitute excessive delay. *Bridgeport Music, Inc.*, 583 F.3d at 954.

Voluntary dismissal without prejudice is also appropriate here as it is clear that the February 27 guidance was issued in response to Plaintiffs' lawsuit— particularly their Motion for Preliminary Injunction filed two days before—in order to address the specific defects in the Signature Matching Regime that Plaintiffs identified. *See* discussion *supra* at 2-4, 6-7. And as explained above, the February 27 guidance largely adopts the specific reforms Plaintiffs requested in their Motion. *See id*.

Moreover, the Secretary's Response expressly acknowledges that Plaintiffs identified substantial burdens on the right to vote, created by the Signature Matching Regime, which the Secretary's guidance was designed to address. *See, e.g.*, ECF No. 28 at 17 ("Plaintiffs have shown that Ms. Accardo's and Mr. Turner's 2018 AV ballots were rejected based on nonmatching signatures, and that they were not advised of this rejection or offered an opportunity to cure or rebut the defect and have their ballot counted. Were this to happen again in the future, a court would likely conclude that it constituted a 'substantial burden' on their right to vote."); *id.* at 19 ("Michigan has and is in the process of implementing additional procedural safeguards to protect voters from potential disenfranchisement."). The Secretary further acknowledges that city and township clerks are expected to follow the February 27 guidance and any other directive. *See* Brater Decl. ¶ 20, Ex. C; ECF No.

10

28-2 at ¶ 20; *see also Hare v. Berrien Cty. Bd. of Election Comm'rs*, 129 N.W.2d 864, 866 (Mich. 1964) (stating local election officials have a "duty to follow the . . . instructions received from" the Secretary).

In sum, the Secretary has adopted new guidance and signature matching procedures in response to Plaintiffs' lawsuit, and has represented to the Court that she intends to implement additional guidance in the future. Because of these developments, and because neither the Michigan Legislature nor the Secretary will be prejudiced by dismissal of this action, Plaintiffs' request to voluntarily dismiss this action without prejudice should be granted.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Voluntary Dismissal without prejudice.

Date: April 21, 2020

Respectfully submitted,

<u>s/ *Marc E. Elias*</u>
Marc E. Elias
Uzoma Nkwonta
Jacki L. Anderson
K'Shaani Smith
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
melias@perkinscoie.com
unkwonta@perkinscoie.com
jackianderson@perkinscoie.com
kshaanismith@perkinscoie.com

Andrew Nickelhoff (P37990)
Nickelhoff & Widick, PLLC
333 W. Fort St., Suite 1400
Detroit, MI 48226
Telephone: (313) 496-9429
Fax: (313) 965-4602
anickelhoff@michlabor.legal

*Counsel for the Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on April 21, 2020, the foregoing was filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                         Respectfully submitted,

                         s/ *Marc E. Elias*